UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>PUERTO RICO PUBLIC FINANCE<br>CORPORATION,<br><br>        Applicant. | PROMESA<br>Title VI<br><br>Case No. 22-cv-01517 (LTS) |

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
APPROVING QUALIFYING MODIFICATION FOR THE PUERTO RICO PUBLIC
FINANCE CORPORATION PURSUANT TO SECTION 601(M)(1)(D) OF THE
PUERTO RICO OVERSIGHT, MANAGEMENT, AND ECONOMIC STABILITY ACT

The Financial Oversight and Management Board for Puerto Rico, as Administrative

Supervisor (the "Oversight Board")[1] for the Puerto Rico Public Finance Corporation, as Issuer

("PFC"), having:

  a.  commenced, on October 25, 2022, a solicitation of votes to accept or reject the *Qualifying Modification Pursuant to PROMESA Title VI for the Puerto Rico Public Finance Corporation* attached hereto as **Exhibit A** (the "Qualifying Modification") pursuant to section 601 of PROMESA (the "Solicitation") by delivering a copy of the Issuer's Solicitation Statement, dated October 25, 2022 (the "Solicitation Statement"), to all Eligible Voters (as defined herein), as evidenced by, among other things, the *Affidavit of Solicitation* (Docket Entry No. 25; FOMB Ex. 13 at Docket Entry No. 38-13) (the "Solicitation Affidavit") filed by Kroll Restructuring Administration LLC (the "Information Agent") on November 22, 2022;

  b.  filed, on October 28, 2022 (the "Title VI Application Date"), the *Application of the Puerto Rico Public Finance Corporation, By and Through the Financial Oversight and Management Board for Puerto Rico, as Administrative Supervisor, for Approval of the Qualifying Modification for PFC Pursuant to section 601(m)(1)(D) of the Puerto Rico Oversight, Management, and Economic Stability Act* (Docket Entry No. 1)[2] (the "Approval Application"), thereby commencing the above-

---

[1]  Unless otherwise noted herein, capitalized terms not defined in these findings of fact, conclusions of law, and order (collectively, this "Approval Order" or this "Order") have the meanings ascribed to them in the Qualifying Modification, and if not therein defined, in Title VI of PROMESA.  The Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") is codified at 48 U.S.C. section 2101 et seq.  References to "PROMESA" section numbers herein are to the uncodified version of the legislation.

[2]  All docket references are to entries in Case No. 22-cv-01517 unless otherwise indicated.

captioned action pursuant to Title VI of PROMESA (the "Title VI Case"), pursuant to District of Puerto Rico Local Civil Rule 3.1;

c.     filed, on October 28, 2022, the *Declaration of Brian S. Rosen in Support of the Application of the Puerto Rico Public Finance Corporation, By and Through the Financial Oversight and Management Board for Puerto Rico, as Administrative Supervisor, for Approval of the Qualifying Modification for PFC Pursuant to section 601(m)(1)(D) of the Puerto Rico Oversight, Management, and Economic Stability Act* (Docket Entry No. 2) (the "Rosen Declaration");

d.     caused notice (the "Hearing Notice") of the Procedures Order (defined below), including of the Approval Hearing (each as defined below), to be served on (i) all holders of the right to vote to accept or reject the Qualifying Modification pursuant to section 601(j) of PROMESA, (ii) trustee for the PFC Bonds, U.S. Bank Trust National Association and U.S. Bank National Association, (the "PFC Bond Trustee"), (iii) counsel to AmeriNational Community Services, LLC (as servicer for the DRA), (iv) counsel to Cantor-Katz Collateral Monitor LLC (a Delaware limited liability company and as collateral monitor for the holders of bonds issued by the GDB Debt Recovery Authority) (the "Collateral Monitor"), (v) counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), (vi) counsel to the GDB Debt Recovery Authority (the "DRA"), and (vii) the Office of the United States Trustee for the District of Puerto Rico, as evidenced by the Affidavit of Service (Docket Entry No. 26; FOMB Ex. 14 at Docket Entry No. 38-14) (the "Hearing Affidavit") filed by the Information Agent on November 22, 2022;

e.     filed on November 4, 2022, the *Supplemental Declaration of Brian S. Rosen in Support of the Application of the Puerto Rico Public Finance Corporation, By and Through the Financial Oversight and Management Board for Puerto Rico, as Administrative Supervisor, for Approval of the Qualifying Modification for PFC Pursuant to section 601(m)(1)(D) of the Puerto Rico Oversight, Management, and Economic Stability Act* (Docket Entry No. 21; FOMB Ex. 12 at Docket Entry No. 38-12) (the "First Supplemental Rosen Declaration");

f.     filed on November 30, 2022, the *Urgent Motion for Approval of Joint Stipulation and Order Regarding (A) the Qualifying Modification Pursuant to PROMESA Title VI for the Puerto Rico Public Finance Corporation and (B) Briefing and Hearing with Respect to the Issuance of DRA Bonds* (Docket Entry No. 31) (the "Joint Stipulation Motion");

g.     filed, on December 2, 2022, the *Declaration of Christina Pullo of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Votes Cast to Accept or Reject Qualifying Modification Pursuant to PROMESA Title VI For the Puerto Rico Public Finance Corporation* (Docket Entry No. 33; FOMB Ex. 11 at Docket Entry No. 38-11) (the "Voting Certification"), indicating that (i) Eligible Voters holding over seventy-three percent (73%) of the aggregate Outstanding Principal amount of Outstanding Bonds in the Pool voted to

accept the Qualifying Modification; and (ii) Eligible Voters holding over ninety-three percent (93%) of the Outstanding Principal amount of Outstanding Bonds in the Pool that voted in the Solicitation voted to accept the Qualifying Modification (the "Requisite Approvals");

h.    filed, on December 2, 2022, the *Second Supplemental Declaration of Brian S. Rosen in Support of the Application of the Puerto Rico Public Finance Corporation, By and Through the Financial Oversight and Management Board for Puerto Rico, as Administrative Supervisor, for Approval of the Qualifying Modification for PFC Pursuant to section 601(m)(1)(D) of the Puerto Rico Oversight, Management, and Economic Stability Act* (Docket Entry No. 34; FOMB Ex. 19 at Docket Entry No. 38-19) (the "Second Supplemental Rosen Declaration"), which included as Exhibit A thereto:

- the certification from the Oversight Board, pursuant to section 601(m)(1)(B) of PROMESA, indicating that the (i) the voting requirements of section 601 of PROMESA have been satisfied; (ii) the Qualifying Modification complies with the requirements set forth in section 104(i)(1) of PROMESA; and (iii) any conditions (other than those identified in the Qualifying Modification as being non-waivable) on the effectiveness of the Qualifying Modification have been satisfied (subject to satisfaction of conditions that will necessarily only be met upon closing and after the Court enters an order approving the Qualifying Modification pursuant to section 601(m)(1)(D) of PROMESA) or, in the Oversight Board's sole discretion, satisfaction of such conditions has been waived (FOMB Ex. 10 at Docket Entry No. 38-10) (the "601(m) Certification").

This Court having:

i.    pursuant to the *Order Granting Motion for Entry of an Order Approving Procedures and Establishing Schedule for Approval of Qualifying Modification for the Puerto Rico Public Finance Corporation*, dated November 1, 2022 (Docket Entry No. 10) (the "Procedures Order"), set December 14, 2022, at 9:30 a.m. (Atlantic Standard Time), as the date and time for the commencement of the hearing to consider approval of the Qualifying Modification (the "Approval Hearing");

ii.    reviewed the Solicitation Statement, the Approval Application, the Rosen Declaration, the Voting Certification, the First Supplemental Rosen Declaration, the Second Supplemental Rosen Declaration, the 601(m) Certification, and all pleadings, exhibits, statements, responses, and comments regarding approval of the Qualifying Modification ("Approval"), including all objections, statements, and reservations of rights filed on the docket;

iii.   approved the Joint Stipulation Motion by order, dated December 1, 2022 (Docket Entry No. 32; FOMB Ex. 15 at Docket Entry No. 38-15) (the "Joint Stipulation");

iv.    held the Approval Hearing;

v.      heard the statements and arguments made by counsel and pro se objector Mr. Yusif Mafuz Blanco in respect of Approval (Docket Entry No. 77);

vi.     considered all oral representations, documents, filings, and evidence regarding Approval;

vii.    overruled the *Motion to Object to the Approval of the Qualifying Modification for the PR Public Finance Corp* (Docket Entry No. 23), the *Supplement to Motion* (Docket Entry No. 30), and, to the extent construed as an objection to the Approval Application and approval of the Qualifying Modification, the *Informative Motion* (Docket Entry No. 69); and

viii.   taken judicial notice of the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, dated January 14, 2022 (Docket Entry No. 19784 in Case No. 17-03283) (the "Title III Plan"), all filings and proceedings in connection therewith, including the *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* (Docket Entry No. 19813 in Case No. 17-03283) (the "Confirmation Order").

NOW, THEREFORE, the Court having found that adequate and appropriate notice of the Approval Hearing and the opportunity for any party to object to Approval has been given; and the record of the Title VI Case and the legal and factual bases set forth in the documents filed in support of Approval and presented at the Approval Hearing, including, but not limited to, the Solicitation Statement, the Approval Application, the Rosen Declaration, the Voting Certification, the First Supplemental Rosen Declaration, the Second Supplemental Rosen Declaration, and the 601(m) Certification, establish just cause for the relief granted in this Approval Order; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and orders:

## I.      FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND

ORDERED THAT:

**A.      Findings of Fact and Conclusions of Law.**

      1.      All findings of fact and conclusions of law announced by the Court at the Approval Hearing in relation to Approval are hereby incorporated into this Approval Order to the extent not inconsistent herewith.  To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such.

**B.      Jurisdiction.**

      2.      The Court has subject matter jurisdiction of this matter pursuant to sections 106(a) and 601(m)(1)(D) of PROMESA, and Local Rule 3.1.  The Court has original and exclusive jurisdiction to determine whether the Qualifying Modification complies with the applicable provisions of section 601 of PROMESA and should be approved.  The Court may properly retain competent jurisdiction of the matters arising out of PROMESA or arising from the Title VI Case.

**C.      Title VI of PROMESA.**

      3.      The creditor collective action provisions of Title VI of PROMESA provide a method for the Commonwealth of Puerto Rico (the "Commonwealth") and certain designated agencies and instrumentalities, including the Issuer, to effectuate a restructuring of their bond financings and other indebtedness based on the consent of a supermajority of those creditors voting in a particular class and can become binding on dissenting creditors in such class.  The Oversight Board serves as the "Administrative Supervisor" in Title VI pursuant to section 601(a)(1) of PROMESA.

**D.      Eligibility to Be an Issuer Pursuant to Title VI.**

      4.      An entity may be an "Issuer" pursuant to Title VI of PROMESA if such entity (a) is a covered territorial instrumentality (see PROMESA § 601(a)(2)), (b) is specifically authorized— as an "Authorized Territorial Instrumentality"—to be eligible to avail itself of the procedures

pursuant to section 601 of PROMESA by the Oversight Board, as the Administrative Supervisor (see PROMESA § 601(e)), and (c) has issued or guaranteed at least one Bond[3] that is Outstanding[4] (see PROMESA § 601(a)(8)).

5.　On September 30, 2016, the Oversight Board designated PFC as a covered territorial instrumentality.  (FOMB Ex. 1 at Docket Entry No. 38-1.)  On September 15, 2022, the Oversight Board issued a resolution authorizing PFC to avail itself of Title VI and designating PFC as an Authorized Territorial Instrumentality pursuant to section 601(e) of PROMESA.  (See FOMB Ex. 5 at Docket Entry No. 38-5.)  As evidenced by the bonds listed in Exhibit B to the Solicitation Statement—each of which qualifies as a Bond pursuant to PROMESA (as described further below)—PFC has issued at least one Bond.  In addition, as evidenced by the certification of disenfranchised Bonds delivered by PFC to the Calculation Agent (as defined below) pursuant to section 601(c) of PROMESA, all of such Bonds listed in Exhibit B to the Solicitation Statement are Outstanding.  (See FOMB Ex. 6 at Docket Entry No. 38-6.)  Thus, PFC is an eligible Issuer pursuant to Title VI of PROMESA.

E.　**Proponents Validly Proposed the Modification.**

6.　Pursuant to section 601(i) of PROMESA, a Modification[5] may be proposed to the Oversight Board, as Administrative Supervisor, by "one or more holders of the right to vote the

---

[3]　A "Bond" pursuant to PROMESA includes a bond, loan, letter of credit, other borrowing title, obligation of insurance, or other financial indebtedness for borrowed money.  See PROMESA § 5(2).

[4]　A Bond is "Outstanding" pursuant to PROMESA as long as it is not disqualified pursuant to section 601(b) because, for example, it is held by the Issuer or an entity controlled by the Issuer.  See PROMESA § 601(a)(10).

[5]　A "Modification" can be any modification, amendment, supplement or waiver affecting one or more series of Bonds, including those effected by way of exchange, repurchase, conversion or substitution.  See PROMESA § 601(a)(9).

Issuer's Outstanding Bonds." PROMESA § 601(i).

7.      Holders (the "PFC Holders") of bonds issued by PFC (the "PFC Bonds") have the right to vote on the Outstanding Bonds. As such, each may individually or collectively properly propose, and possesses the right to vote with respect to, a Modification pursuant to section 601(i) of PROMESA.

8.      The Outstanding Bonds are those Bonds issued by PFC and defined collectively as the "PFC Bonds" in the Qualifying Modification (each, an "Outstanding Bond"). Each Outstanding Bond constitutes a Bond in accordance with section 5(2) of PROMESA because it is either a bond, loan, letter of credit, other borrowing title, obligation of insurance or other financial indebtedness for borrowed money.

9.      The modification of the Outstanding Bonds on the terms and subject to the conditions set forth in the Qualifying Modification constitutes a "Modification" pursuant to section 601(a)(9) of PROMESA because it provides for the modification and cancellation, except as provided in the Qualifying Modification, of the Outstanding Bonds to be effected by way of contribution of (a) Thirteen Million Eight Hundred Thousand Dollars ($13,800,000.00) in Cash and (b) subject to the entry of an order not otherwise stayed authorizing the issuance of the DRA Bonds (as defined below) in accordance with paragraph 51 hereof, new DRA Bonds (as defined below) on account of the PFC Bond Trustee GDB Claim in an original principal amount not to exceed Forty-Seven Million Six Hundred Ninety Thousand Five Hundred and Sixty-One Dollars and Sixty Cents ($47,690,561.60) to be issued in accordance with the DRA Bond Indenture. (See FOMB Ex. 8 at Docket Entry No. 38-8.)

10.     On November 14, 2021, certain PFC Holders validly proposed to the Oversight Board, as Administrative Supervisor, a Modification of the Outstanding Bonds pursuant to Title VI

in compliance with section 601(i) of PROMESA.  (See FOMB Ex. 2 at Docket Entry No. 38-2.)

11.     On January 20, 2022, the Oversight Board, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), on behalf of the PFC, and certain holders of Outstanding Bonds, entered into the *Restructuring Support Agreement* (as may be amended or modified, the "Original PFC RSA"), which, among other things, sets forth the initial terms and conditions for a consensual modification of the Outstanding Bonds pursuant to Title VI of PROMESA.  (See FOMB Ex. 3 at Docket Entry No. 38-3.)  On October 25, 2022, the Oversight Board entered into that certain First Amendment to Restructuring Support Agreement (the "First Amendment", and together with the Original PFC RSA, the "PFC RSA") with AAFAF, on behalf of the PFC, and certain holders of Outstanding Bonds, which provided for certain revised terms and conditions for a consensual modification of the Outstanding Bonds pursuant to Title VI of PROMESA.  (See FOMB Ex. 4 at Docket Entry No. 38-4.)

**F.     The Oversight Board, as Administrative Supervisor, Certified the Qualifying Modification.**

12.     On September 15, 2022, the Oversight Board, as the Administrative Supervisor, certified the Qualifying Modification, pursuant to the "Voluntary Agreement Process" set forth in section 601(g)(2)(A) of PROMESA, thereby establishing it as a "Qualifying Modification" pursuant to PROMESA.  (See FOMB Ex. 5 at Docket Entry No. 38-5.)

13.     In certifying the Qualifying Modification, the Oversight Board determined that: (i) the transactions to be executed pursuant to the Qualifying Modification constitute a voluntary agreement (a "Voluntary Agreement") that provides for a sustainable level of debt for PFC, in accordance with section 104(i)(1)(B) of PROMESA, because the PFC Bonds will be cancelled pursuant to the Qualifying Modification; (ii) such Voluntary Agreement became effective because the holders of a majority in amount of Bond Claims (as defined in PROMESA) in respect of the

Outstanding Bonds ("Outstanding Bond Claims") entered into the PFC RSA, in accordance with section 104(i)(2)(B) of PROMESA; and (iii) the Qualifying Modification satisfies PROMESA's requirement that each holder in the same Pool receive the same consideration, in accordance with section 601(g)(1)(B).  (See FOMB Ex. 5 at Docket Entry No. 38-5.)

**G.**     **Establishment of the Pool of Bonds.**

14.     Pursuant to section 601(d) of PROMESA, the Oversight Board, as Administrative Supervisor, in consultation with the Issuer, is required to establish one or more classes of Bonds— called "Pools"—for purposes of voting on the Qualifying Modification based on certain prescribed classification requirements.  Each Outstanding Bond Claim is placed into one Pool established for the Qualifying Modification: the Pool for PFC Bond Claims.  (See FOMB Ex. 5 at Docket Entry No. 38-5.)  The Pool includes only claims against PFC arising from or relating to the PFC Bonds. There are no other Outstanding Bond Claims other than those identified herein.  On September 15, 2022, the Oversight Board, as Administrative Supervisor, issued a resolution establishing, after consultation with PFC, the PFC Bond Claims Pool is the only Pool pursuant to section 601(d) of PROMESA.  (See FOMB Ex. 5 at Docket Entry No. 38-5.)

**H.**     **The Terms of the Qualifying Modification.**

15.     The terms of the Qualifying Modification are to be effected, subject to the terms and conditions set forth in the Qualifying Modification and herein, including, without limitation, decretal paragraph 51 hereof, pursuant to which (a) PFC and the Commonwealth will contribute, in the aggregate, Thirteen Million Eight Hundred Thousand Dollars ($13,800,000.00) in Cash and (b) subject to the entry of an order not otherwise stayed authorizing the issuance of the DRA Bonds (as defined below) in accordance with paragraph 51 hereof, AAFAF and the Government Development Bank for Puerto Rico (the "GDB") will direct the DRA to issue bonds on account of the PFC Bond Trustee GDB Claim in accordance with the DRA Bond Indenture in the original

principal amount of Forty-Seven Million Six Hundred Ninety Thousand Five Hundred and Sixty-One Dollars and Sixty Cents ($47,690,561.60) or such lower amount as determined by the Court (the "DRA Bonds").  (See FOMB Ex. 8 at Docket Entry No. 38-8.)

16.    The parties to the Qualifying Modification have agreed to effectuate the foregoing pursuant to the terms specifically set forth in the Qualifying Modification and herein (the "Modification Terms").  In accordance therewith, within ten (10) Business Days following the PFC Effective Date (as defined below), the Disbursing Agent shall distribute, or cause to be distributed (a) to the PFC Bond Trustee, the PFC Bond Trustee Fees and (b) to the holders of PFC Bond Claims, the PFC Distribution in accordance with the terms and provisions of section 5.1 of the Qualifying Modification and this Approval Order.  (See FOMB Ex. 8 at Docket Entry No. 38-8.)

17.    The effectiveness of the Qualifying Modification is subject to and conditioned upon the satisfaction of the conditions set forth in section 9.1 of the Qualifying Modification, each of which is required to be certified by the Oversight Board, as Administrative Supervisor, as having been satisfied or waived or as being non-waivable, pursuant to section 601(m)(1)(B)(iii) of PROMESA (collectively, the "Modification Conditions" and, together with the Modification Terms, the "Modification Terms and Conditions" and, the date upon which the Modification Conditions occur, the "PFC Effective Date").  (See FOMB Ex. 8 at Docket Entry No. 38-8.)

## I.    Commencement of the Title VI Case.

18.    On the Title VI Application Date, the Oversight Board filed the Approval Application with the Court, pursuant to District of Puerto Rico Local Civil Rule 3.1.

## J.    Judicial Notice.

19.    The Court takes judicial notice of all informative pleadings filed in the Title VI Case and the Commonwealth Title III Case, the Commonwealth Plan, the Confirmation Order,

and all applicable proceedings and filings with respect thereto.

**K.      Notice.**

20.      As evidenced by the Solicitation Affidavit, the Hearing Affidavit, the Voting Certification, and the 601(m) Certification, due, adequate, and sufficient notice of the Solicitation and the Approval Hearing, together with the deadlines for voting to accept or reject the Qualifying Modification as well as objecting to the Qualifying Modification has been given to, as applicable: (a) all known holders of, or entities with the right to vote, Outstanding Bonds; (b) the PFC Bond Trustee; (c) counsel to the DRA (d) counsel to AmeriNational Community Services, LLC (as servicer for the DRA); (e) counsel to the Collateral Monitor; and (f) parties that requested notice in the Title VI Case.  As evidenced by the Hearing Affidavit, the Oversight Board, through the Information Agent, caused the Hearing Notice to be served on all parties in interest with respect to PFC.  Accordingly, no other or further notice is or shall be required.

**L.      Solicitation.**

21.      PFC, through the Information Agent, solicited votes for acceptance or rejection of the Qualifying Modification from Eligible Voters in compliance with sections 601(f) of PROMESA and (h) and all other applicable rules, laws, and regulations.  All procedures used to distribute the Solicitation Statement to holders of Outstanding Bond Claims eligible to vote (each, an "Eligible Voter"), as set forth in the Solicitation Affidavit and the Voting Certification, were timely, adequate and sufficient and in accordance with PROMESA, applicable securities laws, and all other applicable rules, laws, and regulations.  In particular, and without limitation, as evidenced by the Solicitation Affidavit and the Voting Certification and as detailed below, (a) the Solicitation Statement was transmitted to all Eligible Voters; (b) Eligible Voters were provided sufficient and reasonable information, time, and notice to vote to accept or reject the Qualifying Modification;

and (c) votes were tabulated fairly, in good faith, and as set forth in the Solicitation Statement and the Voting Certification.

      i.    **Transmission of Solicitation Statement.** As described in the Solicitation Affidavit, on October 25, 2022, the Information Agent distributed the Solicitation Statement via (a) electronic mail and (b) overnight mail or next business day delivery to the Depository Trust Company ("DTC") and to beneficial owners of the Outstanding Bonds by serving the banks, brokers, dealers, mailing agents, nominees (or their agents) that hold the Outstanding Bonds "in street name" at the DTC on behalf of such beneficial owners. Such transmission of the Solicitation Statement, as evidenced by the Solicitation Affidavit, was timely, adequate, and sufficient under the circumstances, and no further transmission of the Solicitation Statement was required.

      ii.    **Voting Deadline.** Establishment and notice of the deadline by which holders of PFC Bond Claims were required to elect an option on The Depository Trust Company's Automated Tender Offer Program platform to be counted for or against the Qualifying Modification (the "Voting Deadline") was appropriate and reasonable under the circumstances. The period during which votes were solicited on the Qualifying Modification, as evidenced by the Solicitation Affidavit and the Voting Certification, was a reasonable period of time for Eligible Voters to make an informed decision to accept or reject the Qualifying Modification.

**M.**    <u>**Voting Report.**</u>

22.    Prior to the Approval Hearing, the Voting Certification was filed with the Court, certifying the method and results of the votes tabulated. As of the Voting Deadline, (i) holders of at least two-thirds (2/3) of the Outstanding Principal amount of the Outstanding Bonds in the Pool that voted in the Solicitation, voted to accept the Qualifying Modification, and (ii) holders of the right to vote not less than a majority of the aggregate Outstanding Principal amount of all the Outstanding Bonds in the Pool, have voted to accept the Qualifying Modification. As set forth in the Voting Certification, the procedures used to tabulate the votes were fair and reasonable. As evidenced by the Voting Certification, votes to accept or reject the Qualifying Modification have been solicited and tabulated fairly and in a manner consistent with PROMESA and each of the Pools of Outstanding Bonds voted to accept the Qualifying Modification.

**N.**     **Burden of Proof.**

23.     The Oversight Board, as Administrative Supervisor for PFC and applicant for approval of the Qualifying Modification, has met its burden of proving the elements of section 601 of PROMESA by a preponderance of the evidence, the applicable evidentiary standard for Approval.

**O.**     **Compliance with the Requirements of section 601 of PROMESA.**

24.     The Qualifying Modification complies with all applicable provisions of section 601 of PROMESA.

i.     **section 601(d)—Compliance with Applicable PROMESA Pooling Requirements.** On September 15, 2022, the Oversight Board, as the Administrative Supervisor, established one Pool pursuant to section 601(d) of PROMESA. (See FOMB Ex. 5 at Docket Entry No. 38-5.) The Qualifying Modification classifies each Outstanding Bond into one Pool based on the requirements of section 601(d)(3) of PROMESA, as set forth in the Qualifying Modification. No Outstanding Bonds that have identical rights in security or priority have been placed into separate Pools, and no Outstanding Bonds are entitled to a separate Pool pursuant to PROMESA. The pooling of the Outstanding Bonds set forth in the Qualifying Modification complies with the pooling requirements pursuant to PROMESA. The Qualifying Modification therefore satisfies the requirements of section 601(d) of PROMESA.

ii.     **section 601(e)—PFC is An Authorized Territorial Instrumentality.** On September 15, 2022, the Oversight Board, as Administrative Supervisor, authorized PFC pursuant to section 601(e) of PROMESA to be eligible to avail itself of the procedures pursuant to section 601 of PROMESA, thereby establishing PFC as an Authorized Territorial Instrumentality. (See FOMB Ex. 5 at Docket Entry No. 38-5.) The Qualifying Modification therefore satisfies the requirements of section 601(e) of PROMESA.

iii.     **section 601(f)—Compliance with the Information Delivery Requirement.** Prior to Solicitation, PFC delivered to the Oversight Board, as Administrative Supervisor, Kroll Restructuring Administration LLC (the "Calculation Agent"), and the Information Agent a copy of the Solicitation Statement, which includes, among other things, (a) sufficient descriptions of (i) PFC's economic and financial circumstances, (ii) PFC's existing debts and (iii) the impact of the proposed Qualifying Modification on the PFC's public debt; (b) a description of any other modifications being sought by PFC affecting any other Pools; and (c) sufficient information as required pursuant to applicable securities laws. On October 25, 2022, the Oversight Board acknowledged receipt of the Solicitation Statement.

(See FOMB Ex. 7 at Docket Entry No. 38-7.)  The Qualifying Modification therefore satisfies the requirements of section 601(f) of PROMESA and the Solicitation Statement provides the information required pursuant to applicable securities laws pursuant to section 601(f)(4) of PROMESA.

iv.   **section 601(g)—The Qualifying Modification was Certified by the Oversight Board.**   On September 15, 2022, the Oversight Board, as Administrative Supervisor, certified the Qualifying Modification pursuant to section 601(g)(2) of PROMESA based on (a) its certification of the Qualifying Modification as a Voluntary Agreement pursuant to section 104(i)(1) of PROMESA; (b) its finding that the Voluntary Agreement became effective pursuant to section 104(i)(2) of PROMESA; and (c) its finding that the Qualifying Modification satisfies the same consideration requirement pursuant to section 601(g)(1)(B) of PROMESA.  (See FOMB Ex. 5 at Docket Entry No. 38-5.)  The Qualifying Modification therefore satisfies the requirements of section 601(g) of PROMESA.

v.    **section 601(h)—The Qualifying Modification has Been Properly Solicited.**  PFC, through the Information Agent, solicited votes for acceptance or rejection of the Qualifying Modification in compliance with PROMESA, applicable securities laws, and all other applicable rules, laws, and regulations.  On October 25, 2022, the Information Agent provided notice of the Solicitation via (a) electronic mail and (b) overnight mail or next business day delivery to the DTC and to beneficial owners of the Outstanding Bonds by serving the banks, brokers, dealers, mailing agents, nominees (or their agents) that hold the Outstanding Bonds "in street name" at the DTC on behalf of such beneficial owners as described in the Solicitation Affidavit.  The Qualifying Modification therefore satisfies the requirements of section 601(h) of PROMESA.

vi.   **section 601(i)—The PFC Holders are Eligible to Propose the Qualifying Modification.**  The PFC Holders, as holders of the right to vote one or more of the Outstanding Bonds, are eligible to propose the Qualifying Modification in accordance with section 601(i) of PROMESA.  (See FOMB Ex. 2 at Docket Entry No. 38-2.)  The Qualifying Modification therefore satisfies the requirements of section 601(i) of PROMESA.

vii.  **section 601(j)—The Voting Requirements Have Been Satisfied Prior to the Approval Hearing.**  As evidenced by the Voting Certification and the 601(m) Certification (a) Eligible Voters holding over 50% of the Outstanding Principal amount of Outstanding Bonds in the Pool voted to accept the Qualifying Modification; and (b) Eligible Voters holding over 66 2/3% of the Outstanding Principal amount of Outstanding Bonds in the Pool that voted in the Solicitation voted to accept the Qualifying Modification.   The Qualifying Modification therefore satisfies the requirements of section 601(j) of PROMESA.

viii. **section 601(k)— Kroll Restructuring Administration LLC has been Properly Designated as the Calculation Agent.**  Kroll Restructuring Administration LLC has been properly appointed Calculation Agent, which appointment was confirmed

to be acceptable to the Oversight Board, as Administrative Supervisor. (See FOMB Ex. 5 at Docket Entry No. 38-5.) The Qualifying Modification therefore satisfies the requirements of section 601(k) of PROMESA.

ix.     **section 601(l)— Kroll Restructuring Administration LLC has been Properly Designated as the Information Agent.** Kroll Restructuring Administration LLC has been properly appointed Information Agent, which appointment was confirmed to be acceptable to the Oversight Board, as Administrative Supervisor. (See FOMB Ex. 5 at Docket Entry No. 38-5.) The Qualifying Modification therefore satisfies the requirements of section 601(l) of PROMESA.

x.     **section 601(m)—The Qualifying Modification Satisfies the Requirements Necessary to Become Binding and Effective.** Pursuant to section 601(m) of PROMESA, (a) the voting requirements of section 601 of PROMESA have been satisfied; (b) the Oversight Board, as Administrative Supervisor, has certified that (i) the Requisite Approvals have been obtained, (ii) the Qualifying Modification complies with the requirements set forth in section 104(i)(1) of PROMESA, and (iii) any conditions to the effectiveness of the Qualifying Modification have been satisfied (subject to satisfaction of conditions that will necessarily only be met upon closing and after the Court enters an order approving the Qualifying Modification pursuant to section 601(m)(1)(D) of PROMESA) or, in the Oversight Board's sole discretion, satisfaction of such conditions (other than those identified in the Qualifying Modification as being non-waivable) has been waived; (c) with respect to holders of PFC Bonds who rejected or did not consent to the Qualifying Modification, such holders will receive at least the equivalent value of the lesser of the amount of the Bond Claim or of the collateral securing such Bond Claim pursuant to section 601(m)(1)(C)(ii) of PROMESA; and (d) pursuant to this Approval Order, the Qualifying Modification is approved. (See FOMB Ex. 10 at Docket Entry No. 38-10.) The Qualifying Modification therefore satisfies the requirements of section 601(m) of PROMESA.

**P.     Modification Terms and Conditions.**

25.     The Qualifying Modification is the result of extensive arms' length negotiations among the Oversight Board, AAFAF, PFC, the PFC Bond Trustee, and holders of Outstanding Bonds. The Modification Terms and Conditions reflect compromises and settlements among the Oversight Board, AAFAF, PFC, the PFC Bond Trustee, and holders of Outstanding Bonds. Accordingly, based upon the record of the Title VI Case, the representations and the evidence proffered, adduced, and presented at the Approval Hearing, the Court finds that (i) the Modification Terms and Conditions are essential means of implementing the Qualifying

Modification, (ii) the Modification Terms are integral elements of the Qualifying Modification, and (iii) the Qualifying Modification is expressly conditioned upon the satisfaction of the Modification Conditions.

**Q.**   **The Releases, Exculpations, and Injunctions Pursuant to the Qualifying Modification.**

26.   The Qualifying Modification provides for releases, discharge, exculpation provisions, and injunctions set forth in Article XIV therein (the "Releases") that are integral and critical parts of the Qualifying Modification and the compromises and settlements implemented pursuant thereto.   The approval of such releases is a condition to the occurrence of the PFC Effective Date, and all Released Parties have relied on the efficacy and conclusive effects of such releases and injunctions and on the Title VI Court's retention of jurisdiction to enforce such releases and injunctions when making concessions pursuant to the Qualifying Modification and by agreeing to, accepting, and supporting the settlement and treatment of their respective Claims, Causes of Action, and other rights pursuant to the Qualifying Modification.   Furthermore, such compromises and settlements recognize the significant contributions by parties, including the holders of Outstanding Bonds, to achieve an efficient and consensual modification of the PFC Bonds, and are made in exchange for consideration, including the release of certain Claims and Causes of Action.   The injunction provisions set forth in the Releases are narrowly tailored to give necessary effect to the release and exculpation provisions set forth in the Releases.   The Releases are in addition to any claims barred by operation of law pursuant to section 601(m) of PROMESA. Accordingly, such provisions are justified and warranted based upon the circumstances of the Title VI Case and the consideration being provided by all Released Parties in connection with the Qualifying Modification.

27.   Furthermore, section 14.9 of the Qualifying Modification provides for the

exculpation of the Government Parties and the PFC Bond Trustee for, among other things, any acts taken consistent with the Qualifying Modification or in connection with the formulation, preparation, dissemination, implementation, acceptance, approval of the Qualifying Modification and settlements contained therein.  Such exculpation is narrowly tailored to the exculpated parties' efforts related to the Qualifying Modification, which parties played a key role in the negotiation of the Qualifying Modification and settlements enabling the Qualifying Modification.

28.    Accordingly, the Releases are: (a) consensual; (b) in exchange for the good and valuable consideration provided by the Released Parties; (c) a good faith settlement and compromise of the claims released by such Released Parties; (d) in the best interests of PFC; (e) fair, equitable, and reasonable; (f) appropriately narrow in scope given that they expressly apply to each holder of an Outstanding Bond only in its capacity as such, and do not release claims unrelated to the Qualifying Modification, Title VI Case, or an Outstanding Bond Claim; and (g) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to such Releases.

## II.    ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

### A.    Findings of Fact and Conclusions of Law.

29.    The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

### B.    Notice of the Approval Hearing.

30.    Notice of the Approval Hearing was adequate and sufficient under the

circumstances, and all parties required to be given notice of the Approval Hearing and the deadlines for voting to accept or reject the Qualifying Modification as well as objecting to the Qualifying Modification were given due, proper, timely, and adequate notice in accordance with the Procedures Order and in compliance with applicable law, and such parties had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

**C.      Approval of the Qualifying Modification.**

31.      Subject to the provisions set forth in decretal paragraph 51 hereof, the Qualifying Modification, including the Modification Terms, is hereby approved and binding in its entirety pursuant to sections 601(m)(1)(D), 601(n), and 602 of PROMESA. To the extent that any objections or reservations of rights to Approval of the Qualifying Modification have not been resolved, withdrawn, waived, or settled prior to entry of this Approval Order or otherwise resolved by the relief granted herein or as stated by the Oversight Board, as Administrative Supervisor, on the record of the Approval Hearing, all such objections are overruled on the merits.

**D.      Binding Effect.**

32.      The entry of this Approval Order is deemed to satisfy section 601(m)(1)(D) of PROMESA. Upon the entry of this Approval Order, and subject to the occurrence of the PFC Effective Date, the Qualifying Modification, including the Modification Terms, shall be conclusive, valid, and binding in accordance with section 601(m)(2) of PROMESA, and is not intended to be subject to collateral attack in any other forum by any party, including (i) PFC, (ii) the Commonwealth and its instrumentalities, (iii) each Entity asserting claims or other rights against PFC, including each holder of a PFC Bond Claim and each holder of a beneficial interest (directly or indirectly, as principal, agent, counterpart, subrogee, insurer or otherwise) in respect of the PFC Bonds or with respect to any trustee, any collateral agent, any indenture trustee, any fiscal agent, and any bank that receives or holds funds related to such bonds, whether or not such

claim or other rights of such Entity are impaired pursuant to the Qualifying Modification and, if impaired, whether or not such Entity accepted the Qualifying Modification, (iv) the DRA, the DRA Bond Trustee, Cantor-Katz Collateral Monitor LLC (as collateral monitor for the DRA), and AmeriNational Community Services, LLC (as servicer for the DRA), and (v) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, officers, directors, agents, representatives, attorneys, beneficiaries or guardians.  No person or entity shall enact, adopt, or implement any law, rule, regulation, or policy that impedes, financially or otherwise, consummation and implementation of the transactions contemplated by the Commonwealth Plan or the Qualifying Modification, as applicable.

**E.**   **Authorizations to Consummate the Qualifying Modification.**

33.    Subject to the terms and conditions set forth herein, including the provisions set forth in decretal paragraph 51 hereof, and subject to the conditions precedent to the PFC Effective Date (a) PFC, AAFAF, the Commonwealth, the PFC Bond Trustee, the DRA, and the trustee for the DRA Bond Indenture are hereby authorized and directed to enter into all transactions and take such other actions as may be necessary or appropriate to consummate the Qualifying Modification, including, without limitation, issuance of the DRA Bonds in accordance with the Modification Terms, and (b) subject to the entry of an order not otherwise stayed authorizing the issuance of the DRA Bonds in accordance with paragraph 51 hereof, the DRA and the trustee for the DRA Bond Indenture are hereby authorized and directed to take such action as may be necessary to issue the DRA Bonds in accordance with the Modification Terms.

34.    In consummating the Qualifying Modification, PFC, AAFAF, the Commonwealth, the PFC Bond Trustee, the DRA, and the trustee for the DRA Bond Indenture, as applicable, shall be permitted and are directed to (a) execute and deliver appropriate agreements or other documents containing terms that are consistent with the Modification Terms that satisfy the requirements of

applicable state and territory law and such other terms to which the applicable entities may agree; (b) execute and deliver appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the Modification Terms and having such other terms to which the applicable entities may agree; and (c) subject to the provisions set forth in decretal paragraph 51 hereof, issue the DRA Bonds in accordance with the Modification Terms.  Without limiting the foregoing, PFC, AAFAF, the Commonwealth, the PFC Bond Trustee, the DRA, and the trustee for the DRA Bond Indenture, as applicable, shall be permitted, and shall use their respective reasonable best efforts, to take all other actions that the Oversight Board, as Administrative Supervisor, or AAFAF, as fiscal agent, determines to be necessary or appropriate in connection with such transactions.

F.     **Validity of the DRA Bonds.**

35.     Subject to the provisions set forth in decretal paragraph 51 hereof, including without limitation the determination made pursuant thereto and the entry of an order in connection therewith, the DRA Bonds to be issued, if any, pursuant to such subsequent order of the Court and the Qualifying Modification and in accordance with the DRA Bond Indenture shall, as of such issuance, be deemed authorized and validly issued for due consideration, and constitute valid, binding, legal, and enforceable obligations of the DRA, under Puerto Rico, New York, federal, and other applicable law.

G.     **Delivery of Distributions.**

36.     Generally.  Except as otherwise provided herein or in the Qualifying Modification, distributions and deliveries to holders of Claims shall be made through the Depository Trust Company.  The Disbursing Agent shall make distributions in accordance with the terms of the Qualifying Modification.  Pro Rata Share for purposes of distributions to be made pursuant to section 5.1 of the Qualifying Modification shall be determined as of the PFC Effective Date.  The

Issuer, its agents and servicers, the PFC Bond Trustee, and the Disbursing Agent shall have no obligation to recognize any transfer of PFC Bond Claims after the PFC Effective Date.  Each trustee may conclusively rely upon the distribution instructions received from the Issuer or Administrative Supervisor or its agents with respect to the delivery of distributions in accordance with the terms and provisions of the Qualifying Modification, or other information, including the contra-CUSIP positions and escrow positions established by the Issuer or its agents with The Depository Trust Company, and each trustee shall be entitled to close and terminate the original CUSIPs after distributions in accordance with the terms and provisions of the Qualifying Modification and shall have no further distribution obligations thereunder. No trustee shall be required to post any bond or surety or other security for the performance of its duties, unless otherwise ordered or directed by the Court.  Each trustee shall only be required to make the distributions and deliveries to the extent set forth in the Qualifying Modification and in accordance with the terms of this Approval Order and the Qualifying Modification.  For the avoidance of doubt, section 14.9 of the Qualifying Modification shall cover and apply to matters set forth in this paragraph 36.

37.    <u>Delivery of Distribution with Respect to the PFC Bond Trustee</u>.  Notwithstanding any other provision of the Qualifying Modification or of this Approval Order, pursuant to Article VI of the Qualifying Modification, the Disbursing Agent shall disburse the PFC Bond Trustee Fees to the PFC Bond Trustee in a manner mutually agreed upon between the Disbursing Agent and the PFC Bond Trustee and which shall include a reserve (calculated and provided to the Disbursing Agent on the PFC Effective Date); <u>provided</u>, <u>however</u>, that any amounts reserved but ultimately not used shall be disbursed by the Disbursing Agent to holders of PFC Bond Claims.

38.    <u>Delivery of Distributions with Respect to the Defeasance Funds, the Sinking Fund,</u>

or any separate account therein.  Except as otherwise provided in the Qualifying Modification or

of this Approval Order, pursuant to Article VI of the Qualifying Modification, the PFC Bond

Trustee shall distribute to holders of PFC Bonds entitled to payment from the Sinking Fund, or

any separate account created in accordance with the terms and provisions of the PFC Trust

Agreement, the proceeds of the Sinking Fund, or any separate account created in accordance with

the terms and provisions of the PFC Trust Agreement, in accordance with the terms and provisions

of any controlling agreement and section 5.1 of the Qualifying Modification, provided, however,

the PFC Bond Trustee may transfer to the Disbursing Agent for distribution to holders of PFC

Bond Claims funds in the Sinking Fund other than Defeasance Funds.

**H.      Cancellation of PFC Bonds, Notes, and Other Documents.**

39.      Except (a) as provided in any contract, instrument or other agreement or document

entered into or delivered in connection with the Qualifying Modification, (b) for purposes of

evidencing, implementing and effectuating a right to distribution under the Qualifying

Modification (including without limitation in connection with (i) determination of the issuance of

DRA Bonds by this Court and (ii) a review or appeal process), or (c) as specifically provided

otherwise in the Qualifying Modification, on the PFC Effective Date, the PFC Trust Agreement,

the PFC Bonds and all instruments and documents related thereto, including, without limitation,

the Notes, will be deemed automatically cancelled, terminated and of no further force or effect

against the Issuer, the PFC Bond Trustee, or any Note Counterparty, as applicable, without any

further act or action under any applicable agreement, law, regulation, order or rule, with the Issuer,

the PFC Bond Trustee, or such Note Counterparty, as applicable, having no continuing obligations

or duties and responsibilities thereunder and the obligations of the parties to the Issuer, as

applicable, under the PFC Trust Agreement or the PFC Bonds and all instruments and documents

related thereto, including, without limitation, the Notes, shall be discharged; provided, however,

that, notwithstanding anything contained herein to the contrary, the PFC Trust Agreement, the PFC Bonds and such other instruments and documents shall continue in effect solely (i) to allow the Disbursing Agent to make any distributions as set forth in the Qualifying Modification and to perform such other necessary administrative or other functions with respect thereto, (ii) to allow holders of PFC Bond Claims to receive distributions in accordance with the terms and provisions of the Qualifying Modification, (iii) for any trustee, agent, contract administrator or similar entity under all instruments and documents related thereto, to perform necessary functions, including making distributions, in accordance with the Qualifying Modification (and for the avoidance of doubt, including in connection with a review or appeal process) and to have the benefit of all the rights and protections and other provisions of such instruments and documents, as applicable, and all other related agreements, (iv) for purposes of pursuing rights preserved in accordance with the terms and provisions of section 3.3 of the Qualifying Modification or (v) to set forth the terms and conditions applicable to parties to such documents and instruments other than the Issuer. Notwithstanding the foregoing, and except as otherwise expressly provided in the Qualifying Modification, such bonds or bond documents that remain outstanding shall not form the basis for the assertion of any Claim against the Issuer or any Note Counterparty.  Without prejudice to the exercise of rights by the PFC Bond Trustee contemplated by the Qualifying Modification, as of ten (10) Business Days following the PFC Effective Date, the PFC Bond Trustee shall have no further duties or responsibilities with respect to any PFC Bonds.

I.    **Payment of the PFC Bond Trustee Fees and Expenses**

40.    The distributions to be made pursuant to the Qualifying Modification and this Approval Order are intended to be inclusive of any and all trustee or fiscal agent fees and expenses which may be allegedly due and owing by the Issuer with respect to amounts discharged pursuant to the Qualifying Modification and this Approval Order.  The Qualifying Modification and this

Approval Order do not, nor shall they be construed to, limit the rights of each trustee or fiscal agent to payment of such amounts from the distributions to be made hereunder.

**J.**     **Releases, Exculpations, and Injunctions.**

41.     The Releases set forth in Article XIV of the Qualifying Modification are hereby approved and authorized in their entirety.  Such provisions are: (a) integral parts of the Qualifying Modification; (b) fair, equitable, and reasonable; (c) given for valuable consideration; and (d) in the best interest of PFC and all parties in interest, and such provisions are incorporated in this Approval Order as if set forth in full herein and are approved and shall be effective and binding on all persons and entities, to the extent provided pursuant to the Releases.

42.     On the PFC Effective Date, and for good and valuable consideration,

(i)     each of the Government Parties, the Disbursing Agent and each of the Government Parties' Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties and the PET from any and all Claims or Causes of Action that the Government Parties, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims or otherwise are based upon, relate to, or arise out of or in connection with, in whole or in part, any act, omission, transaction, event or other circumstance relating to the PFC Bonds, including, without limitation, any and all Claims arising from or relating to the PET/PFC Claim, the Notes, the PFC Trust Agreement, the Title VI Case or the Issuer, or this Qualifying Modification taking place or existing on or prior to the PFC Effective Date, and/or any Claim, act, fact, transaction, occurrence, statement, or omission in connection therewith or alleged or that could have been alleged, including, without limitation, any such Claim, demand, right, liability, or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees; and

(ii)     each of the Issuer, the PFC Bond Trustee, each holder of a PFC Bond Claim, and each of such party's Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Issuer, Notes Counterparties and the PFC Bond Trustee, as applicable, from any and all Claims or Causes of Action that such party or any of them, or anyone claiming through them, on their behalf or for their benefit, including, without limitation, holders of PFC Bond Claims, have or may have or claim to have, now or in the future, against the Issuer, any Notes Counterparty and the PFC Bond Trustee, as applicable, that are based upon, relate to, or arise out of

or in connection with, in whole or in part, any act, omission, transaction, event or other circumstance relating to the Notes, the PFC Trust Agreement, or the PFC Bonds.

provided, however, that the foregoing releases are not intended to include, nor shall they have the effect of including, Claims or Causes of Action unrelated to the Issuer and the PFC Bonds, or Claims or Causes of Action for gross negligence, willful misconduct or intentional fraud asserted, or that could have been asserted, whether sounding in contract or tort; provided, further, that the foregoing releases are not intended to release, nor shall they have the effect of releasing, any party from the performance of its obligations in accordance with the Confirmation Order, the Approval Order, the Commonwealth Plan, and the Qualifying Modification.

**K.   Reservation of Rights.**

43.     The Qualifying Modification shall have no force or effect unless and until the PFC Effective Date occurs.  Prior to the PFC Effective Date, none of the filing of the Qualifying Modification, any statement or provision contained in the Qualifying Modification, or action taken by the PFC Bond Trustee, PFC, AAFAF, the Commonwealth, or the Oversight Board with respect to the Qualifying Modification shall be, or shall be deemed to be, an admission or waiver of any rights of the PFC Bond Trustee, PFC, AAFAF, the Commonwealth, or the Oversight Board or any other party with respect to any Outstanding Bond or any other matter.

**L.   Nonseverability of Qualifying Modification Provisions upon Approval.**

44.     Subject to the provisions set forth in decretal paragraph 51 hereof, this Approval Order constitutes a judicial determination that each term and provision of the Qualifying Modification, and securities issued pursuant thereto, is: (a) valid and enforceable in accordance with its terms; (b) integral to the Qualifying Modification and may not be deleted or modified without the Oversight Board's consent, subject to any applicable consultation and approval rights and conditions as provided in the Qualifying Modification; and (c) nonseverable and

mutually dependent.

**M.**    **Compliance with Tax Requirements.**

45.    Any party issuing any instrument or making any distribution pursuant to the Qualifying Modification shall comply with all applicable withholding and reporting requirements imposed by any United States federal, state or local tax law or tax authority, and all distributions pursuant to the Qualifying Modification shall be subject to any such withholding or reporting requirements. Except as provided above, each holder of a PFC Bond Claim that is to receive a distribution pursuant to the Qualifying Modification shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution pursuant to the Qualifying Modification has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such withholding tax obligations and, if any party issuing any instrument or making any distribution pursuant to the Qualifying Modification fails to withhold with respect to any such holder's distribution, and is later held liable for the amount of such withholding, the holder shall reimburse such party. The Disbursing Agent may require, as a condition to the receipt of a distribution, that the holder complete the appropriate Form W-8 or Form W-9, as applicable to each holder.

**N.**    **Retention of Jurisdiction.**

46.    To the fullest extent permitted by law, and notwithstanding the entry of this Approval Order or the occurrence of the PFC Effective Date, this Court shall retain exclusive jurisdiction, or solely to the extent the Title VI Case has been closed in accordance with the terms and provisions of PROMESA, the United States District Court for the District of Puerto Rico is

hereby designated exclusive jurisdiction, of any matter arising pursuant to the Qualifying Modification or this Approval Order, and enforcement of the terms of the Qualifying Modification and the obligations contemplated pursuant thereto.

**O.    Final Order.**

47.    This Approval Order is a final order and is full, final, complete, conclusive and binding upon and shall not be subject to collateral attack or other challenge in any court or other forum by any Entity, including without limitation, (1) the Commonwealth, (2) PFC, (3) AAFAF, (4) the DRA, (5) each person or entity asserting claims or other rights against the Commonwealth, PFC, or any of their respective instrumentalities or agencies, including a beneficial interest (directly or indirectly, as principal, agent, counterpart, subrogee, insurer or otherwise) in respect of the PFC Bonds, or with respect to any trustee, collateral agent, indenture trustee, fiscal agent, and any bank that receives or holds funds related to such bonds, whether or not such claim or other rights of such person or entity are impaired pursuant to the Qualifying Modification and, if impaired, whether or not such person or entity accepted the Qualifying Modification, and (6) any Entity's, and each of the foregoing's, respective heirs, successors, assigns, trustees, executors, officers, directors, agents, representatives, attorneys, beneficiaries or guardians.

48.    The period in which an appeal of this Approval Order must be filed shall commence upon entry hereof.

**P.    Conflicts Among Order and Qualifying Modification.**

49.    The provisions of the Qualifying Modification and this Approval Order shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that, in the event of any irreconcilable inconsistency between the Qualifying Modification and this Approval Order, the documents shall control in the following order of priority: (i) this Approval Order and (ii) the Qualifying Modification; and, provided, further, that

nothing contained herein is intended, nor shall be construed, to modify the economic terms of the Qualifying Modification.

**Q.**    **Waiver of Stay.**

50.    Notwithstanding Rule 62 of the Federal Rules of Civil Procedure or otherwise, this Approval Order shall be effective and enforceable immediately upon entry.  PFC is authorized and directed to consummate the Qualifying Modification at any time after the entry of this Approval Order.

**R.**    **DRA Bond Issue.**

51.    Whether the DRA Bonds, if any, may be issued pursuant to the applicable documents and the Qualifying Modificationn, including whether any such DRA Bonds may be lawfully and validly issued in accordance with applicable law as contemplated by paragraph 35 hereof (the "DRA Bond Issue"), shall be determined by the Court in accordance with the terms of the Joint Stipulation and the timeframe set forth therein, and all parties, including the Oversight Board, AAFAF, PFC, the PFC Bond Trustee, the PFC Holders, the DRA, Cantor-Katz Collateral Monitor LLC, and AmeriNational Community Services, LLC (as servicer for the DRA) reserve all rights with respect to this issue.  All other rights and benefits accorded to the PFC Holders and the PFC Bond Trustee pursuant to and in connection with the Qualifying Modification and this Approval Order are not intended to be prejudiced by the determination of the DRA Bond Issue subsequent to the PFC Effective Date or this decretal paragraph 51, and shall be interpreted in such

a manner as to avoid prejudice.

       SO ORDERED.

Dated:  December 30, 2022

                         /s/ Laura Taylor Swain
                         Laura Taylor Swain
                         United States District Judge

## Exhibit A

**Qualifying Modification**